[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a habeas corpus petition brought by the Petitioner, Keith Barile (hereinafter also "Barile") by First Amended Petition dated June 12, 2002 claiming ineffective assistance of defense counsel, Assistant Public Defender, Leshe Cunningham in the Judicial District of Tolland and ineffective assistance of counsel, Assistant Public Defender, Dence Ferrara, of GA 12 in Manchester. The claim against Attorney Ferrara is primarily that she failed to assist in obtaining a more favorable plea agreement concerning Petitioner's violations of probation in the GA 12 cases in which she represented him. The ineffective assistance of counsel CT Page 10538 as to Attorney Cunningham include her alleged failure to assure Petitioner's guilty pleas were intelligently, knowingly and voluntarily made. In addition, nine other allegations were made in the complaint against Attorney Cunningham which will be described as needed hereafter.
The underlying facts of the criminal cases are, as to the cases in the Judicial District of Tolland, that on or about October 20, 1998, the Petitioner late at night entered Damon's Restaurant in Vernon, Connecticut wearing a brownish colored camouflaged ski mask and a dark colored top. He was described by one of the witnesses as approximately 5'10" weighing 180 lbs. with a stocky build. He was carrying a silver socket wrench in his pocket. He grabbed one of the employees, Melinda, by her left arm and pushed her towards the back where four other employees were located and ordered the five individuals to walk into the cooler, which was unlocked, the door of which was closed by him after they moved into the cooler. Just prior to that the Petitioner grabbed the Manager of the restaurant, John Lock, spun him around and stuck something hard into the right side of his back. According to Lock, the Petitioner then said, "I have a gun and I'll shoot. Everyone get into the walk-in." The Petitioner then pushed Lock into his office, pushed him to the floor in front of the safe and ordered him to open it. According to Lock he replied that he couldn't open the safe without his glasses to which the Petitioner replied, "You're stalling. Keep it up and I am going to shoot you." When Mr. Lock could not find his glasses, the Petitioner struck him on the back of the head with the wrench and again threatened to kill him. Lock replied that the Petitioner would have to kill him because he couldn't find his glasses. Lock then pushed off the floor into the Petitioner throwing him against the copy machine. The Petitioner then grabbed Lock by the right arm and pushed him into the office desk where he sustained injuries to his back. The Petitioner then ran out of the building. Lock described him as a white male with dark hair driving a blue 2-door hatchback type car. Another witness in his statement to the police claimed that the Petitioner said that if he did not hurry into the cooler, he would shoot John Lock. This witness said that the Petitioner escaped in a blue car, and he told a police officer in the parking lot that the suspect had left going onto route 30 toward the K-Mart Plaza. Another witness, in a statement to the police, stated that he had escaped out the back door where he noticed a blue Ford station wagon parked in the lot. He then called the police. Another witness, Sairo, in a statement to the police, said he saw a green Ford station wagon pulling out of the lot whereupon he jumped into his car and began to follow it eastbound on route 30. The Ford then pulled into the K-Mart Plaza parking lot. The witness then drove northbound on route 83. At a later point the police, who had apprehended Barile, drove the witness to Allen Drive, where he identified the man who tried to rob the restaurant. He stated that the man he saw was the Petitioner who had been an assistant manager CT Page 10539 at the restaurant a few months earlier. The Petitioner's mask was found in his car, the description of the car essentially matched what the witnesses had said and the clothing was accurately described.
The Petitioner was accused of Robbery in the First Degree, Assault in the Second Degree, Six Counts of Kidnapping in the First Degree with a Firearm, Illegal Operation of a Motor Vehicle Under Suspension and Reckless Driving. On March 30, 1999, the Petitioner entered pleas of guilty pursuant to a plea bargain to One Count of Robbery in the First degree, One Count of Assault in the Second Degree, Six Counts of Kidnapping in the First Degree with a Firearm and One Count of Operating a Motor Vehicle Under Suspension. Further, as a consequence of the above charges Petitioner was charged with violations of probation in his six cases in GA 12 which had been transferred to the Judicial District of Tolland which transfer was supported by the Petitioner. The guilty plea canvass was done by Kaplan, J. This Court has reviewed the transcript of said canvass and finds that it was proper and complete, and that the pleas were entered intelligently, knowingly and voluntarily with a factual basis for the pleas. The plea agreement was for a total effective sentence of twenty-five years, execution suspended after twenty-one years, with five years of probation and a right to argue for less at the sentencing. After receipt of a Pre-Sentence Investigation Report and an Alternative Sentencing Report submitted by a consultant to the Public Defender's Office, the Court, Kaplan, J., at a hearing on May 28, 1999, sentenced the Petitioner to an effective sentence of twenty-five years incarceration, execution suspended after eighteen years, with five years probation.
 STANDARD OF REVIEW
The "right to counsel is the right to the effective assistance of counsel". Strickland v. Washington, 466 U.S. 668, 686 (1984). InStrickland v. Washington, supra, the United States Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel during criminal proceedings: The defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness, id. 687-88; and (2) that defense counsel's deficient performance prejudiced the defense, id. 694." As for the second prong ofStrickland supra, the Petitioner is required "to demonstrate that there is a reasonable probability that the result of the proceedings would have been different had it not been for counsel's deficient performance. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Copas v. Commissioner of Correction,234 Conn. 139, 154-55 (1995).
In addition, the habeas court evaluates the credibility of the CT Page 10540 witnesses based upon whether their testimony at the criminal trial as well as the habeas trial is inconsistent with testimony of others and evidence at the criminal trial and at the habeas trial and inconsistent with evidence produced at the habeas trial. In addition, the Court's evaluation of their credibility has been based upon their appearance and demeanor on the witness stand, the consistency and inconsistency of their testimony, their memory or lack thereof of certain events, whether they were candid and forthright or evasive and incomplete, their manner in responding to questions and their interest or lack of interest in the case.
 INEFFECTIVE ASSISTANCE OF COUNSEL
The only claim against Attorney Ferrara was ". . . failing to assist in obtaining a more favorable plea agreement concerning Petitioner's violations of probation in that she had twelve cases. . . ." No evidence was presented at trial to sustain such an allegation, and, in fact, as stated above, the six cases in which he violated probation were all wrapped up into the sentence handed down by Kaplan, J. on May 28, 1999 in which the Petitioner was sentenced to the full twelve years of incarceration for the violations of probation which was the maximum amount he owed for the violations, but the twelve years was concurrent with the sentence of twenty-five, execution suspended after eighteen years for Kidnapping in the First Degree with a Firearm. Therefore, he did not receive any additional time as a result of his admitting to the violations of probation. Further, there was no question that these other charges which were originally in the Tolland JD amounted to a violation of the probations. Accordingly, this Court finds that Attorney Fererra was not ineffective, and even if she had been in some way, the end result was that the Petitioner in effect received a suspended sentence for the violations of probation.
As to the alleged ineffective assistance of Attorney Cunningham which is the main thrust of the Petitioner's petition for writ of habeas corpus, the Court, after reviewing the totality of the evidence, including the exhibits and the testimony finds as follows:
1. Of the two witnesses who testified at the habeas hearing, namely Attorney Cunningham and the Petitioner, although the Petitioner appeared very candid at certain points, in particular in explaining why he chose to reject plea bargain offers, the Court still finds the testimony of Attorney Cunningham more credible than that of the Petitioner.
2. Attorney Cunningham discussed the evidence against the Petitioner with him several times. She reviewed the statements of the witnesses because of the "open file policy" of the State's Attorney's Office CT Page 10541 although under the Rules of Practice, the State's Attorney did not have to turn over the statements to the defense attorney until the witnesses had testified at trial. The State's Attorney's Office would not allow copying of the statements. However, defense counsel was allowed to bring a dictating machine to read into the machine the contents of the statements which could be later transcribed. Attorney Cunningham failed to make such a recording in part, according to her, because her office was having secretarial problems. This is really not a valid excuse, and she could have dictated it and played the contents of the statements back to the Petitioner without having a typed copy. The Petitioner complained to her and at the habeas trial that he was not given an opportunity to read the statements. However, this Court concludes that he was not harmed by not having access to the statements because Attorney Cunningham took copious notes, and described to him the contents of the statements. She specifically identified John Lock as having in his statement to the police that the Petitioner stated that he had a gun and would shoot in the presence of all of the other witnesses who were herded into the cooler and that he threatened the use of a gun when he was ordering Mr. Lock to open the safe. She also described to him from Lock's statement Petitioner's action in striking Mr. Lock on the back of the head with the wrench. She also described Melinda's statement, in particular that the Petitioner grabbed her left arm and pushed her forward and that he had dropped to the floor what later was determined to be the silver wrench. Michael's statement contained an allegation that the Petitioner said that if the employees did not hurry up into the cooler, he would shoot John. It is true that only two statements cited the Petitioner's threats to use a gun. However, that would certainly be sufficient to convict him despite the fact that at the habeas trial the Petitioner vigorously denied ever saying that he had a gun or that he would shoot anyone. The Petitioner stated at the habeas trial that when he was the Assistant Manager at that restaurant, the policy of the owners was that in the event of a hold-up, employees were told to give the money to the person committing the robbery. Petitioner thought that, therefore, it would be very easy for him to get the money and flee. He did not foresee Mr. Lock's inability to find his glasses in order to open the safe. The Petitioner stated that he assumed that the combination had been changed since he was there. The Court finds that the Petitioner was not prejudiced by his not having access to the actual written statements. It is the Court's conclusion that Attorney Cunningham sufficiently described what the witnesses had put into their statements. of course, the only way the Petitioner could have disputed the statements was to testify in which case much of his prior record would have become known by the jury. His criminal record included convictions for Criminal Impersonation, Issuing a Bad Check, Larceny in the Sixth Degree, Burglary in the Third Degree, Burglary in the Third Degree, Burglary in the Third Degree, Burglary in the Third Degree, Burglary in the Third Degree and Burglary in the Third Degree.[1]
CT Page 10542 These convictions could have been used against him if he testified. This information comes from the Presentence Investigation Report, Respondent's Exhibit A. It is highly likely, as Attorney Cunningham pointed out, that the jury would believe the seven witnesses and not the Petitioner.
3. Attorney Cunningham, in accordance with the Petitioner's wishes, did make a motion for suspension of prosecution or a suspended sentence and drug treatment because of a finding of drug dependency. The defense presented expert testimony supporting a drug dependency conclusion. Normally, Petitioner would be ineligible for such a finding because of his facing charges of major felonies. However, there can be an exception with the discretion of the judge. Although Attorney Cunningham did a good job in preparing for and arguing for drug dependency, which conclusion of effectiveness was supported by the testimony of the Petitioner at the habeas trial, Judge Kaplan denied the motion.
4. Attorney Cunningham tried to get the charges reduced, but was met by an emphatic "No" by the State's Attorney. She did, through her investigator try to interview the witnesses. The investigator was able to interview only one whose comments were not helpful to the Petitioner, and the others were either unavailable or unwilling to talk with the investigator, which is, of course, their right. Attorney Cunningham also pointed out to the Petitioner that the jury would be looking at the reason for the employees going into the cooler. They must have been threatened in some manner or felt that they were threatened because it is highly unlikely that they would have gone into the cooler voluntarily.
5. Even if the jury were to believe that a gun or threats were not used, the conviction would still be of simple kidnapping which is also a Class A felony with the same penalties.
6. The first plea bargain Attorney Cunningham was able to secure was an offer of twenty years, execution suspended after twelve years which would be all inclusive of the probation violations and other charges. The Petitioner rejected that offer.
7. Petitioner rejected that plea bargain offer and was suspicious of Attorney Cunningham because she did not obtain the written statements for him to review. He also believed that because the plea bargain offer removed the kidnapping charges and replaced them with one count of Unlawful Restraint that there must be a weakness in the State's case. Attorney Cunningham pointed out to him in a face-to face meeting that she was able to get the kidnapping dropped which would make it better for him when he is seeking parole, but the State still had a strong case. He also disagreed with Attorney Cunningham on the definition of "abduction" which is contained in the kidnapping statutes. She pointed out to him that the CT Page 10543 facts of the case would sustain a finding of abduction and kidnapping. She gave him copies of the statutes, jury instructions and cases as to what abduction meant. He still rejected the plea bargain.
8. On March 11, 1999, there was the hearing on drug dependency, and the Petitioner's motion was denied. On January 28, 1999, Attorney Cunningham had sent a letter to the Petitioner, Petitioner's Exhibit 9, summarizing Petitioner's situation in which she stated, inter alia, "In addition to reviewing the evidence and the charges, we also reviewed the penalties that you are exposed to with each charge . . . After several lengthy discussions and despite my advice, you have chosen to reject the State's offer of twenty years, execution suspended after twelve years. . . ." In the letter she pointed out that the judge was very unlikely to give the Petitioner an exception from the drug dependency/suspension of prosecution statute. Attorney Cunningham, in the letter, described the new plea bargain offer as of January 28, 1999 of (a) Twenty years, execution suspended after twelve years; or (b) Twenty-five years, execution suspended after twenty-one years with a right to argue for less at time of sentencing. She recommended that he take the first offer which would have been a definite twelve years to serve (which would not include the kidnapping charges) and would be a definite sentence. The second option she said was "extremely risky because although a successful argument might get you less time than the first option, twelve years to serve, it also exposes you to a maximum of life in prison." If the Petitioner had gone to trial and had been convicted on all of the charges, if sentences were all consecutive, he would be facing one hundred and eighty-seven years in prison, which, of course, would mean a life sentence.
9. Attorney Cunningham had also shown the Petitioner the hospital records regarding the injuries to John Lock.
On March 23, 1999, the Petitioner still wanted to go to trial having lost the motion for suspension of prosecution on March 11, 1999. Jury selection was to begin on March 23, 1999, but then the Petitioner agreed to take the second option despite Attorney Cunningham's advice to take the first option.
10. At the sentencing of May 28, 1999, the Petitioner was sentenced to twenty-five years, execution suspended after eighteen years even though Attorney Cunningham had argued for a much lesser sentence.
11. This Court finds that the Petitioner has not sustained his burden of proving ineffective assistance of counsel. In paragraph 12(a) of the Complaint which involved Attorney Cunningham not giving the Petitioner actual copies of statements of victims, the Court has already addressed that and finds that Attorney Cunningham did give him sufficient CT Page 10544 information despite her inability to obtain the statements. The Petitioner has failed to prove paragraph (b), failing to interview the victims; paragraph (c), failing to obtain medical reports concerning injuries to one or more of the victims; paragraph (d), failing to provide Petitioner copies of police reports, which issue was never brought up at the habeas trial; paragraph (e), failing to vigorously pursue a favorable plea agreement concerning the violations of probation in the GA 12 cases which the Court has already addressed; paragraph (f), failing to enlist the assistance of Attorney Ferrara in obtaining a more favorable plea agreement in the GA 12 cases (the Court has already addressed paragraphs (e) and (f) by showing that the sentences on these charges were all concurrent to the larger sentence to which the Petitioner pleaded guilty); paragraphs (g), (h) and (i), failing to adequately explain the elements of Kidnapping in the First Degree with a Firearm, etc., failing to vigorously pursue a plea agreement involving reduction of the kidnapping charges to a lesser offense and paragraph (i) failing to adequately explain to the Petitioner the consequences of his guilty pleas, including sentencing consequences. The Court finds that Attorney Cunningham did explain the elements of Kidnapping in the First Degree with a Firearm, but the Petitioner continued to disagree with what she said; she did explain the strengths and weaknesses of the State's case, she did vigorously pursue a plea agreement involving reduction of the kidnapping charges to a lesser offense which she accomplished, but he rejected and she did adequately explain the consequences of his guilty pleas including sentencing consequences. The January 28, 1999 letter is certainly evidence of that.
12. The Court concludes, after listening to the Petitioner, that he believed he had more confidence in his own opinions about the law and the evidence than he did in Attorney Cunningham's ability to analyze the law and the evidence.[2] His suspicion of Attorney Cunningham as described above was unwarranted. The Petitioner appears to be an intelligent man, but not as intelligent as he thought he was. Ignoring the advice of counsel and substituting his judgment for hers was a huge mistake on his part, and his stubbornness in this regard produced a sentence of eighteen years to serve versus the twelve years that Attorney Cunningham negotiated.
13. Accordingly, this Court finds that Attorney Cunningham did an excellent job on behalf of the Petitioner and did provide effective assistance of counsel. The problem was that the Petitioner refused to accept her advice.
 WOULD THE RESULT HAVE BEEN DIFFERENT?
The second prong of Strickland, supra, provides that the Petitioner CT Page 10545 must prove that if it were not for the ineffective assistance of counsel, the result would probably have been different. First, the Court has already ruled that counsel was not ineffective. However, assuming arguendo, that she was ineffective, this Court finds that if the Petitioner had gone to trial, the overwhelming evidence against him, the witnesses' statements, his previous employment at that restaurant, the identification of him once he was apprehended, and the finding of the clothes and mask he wore when he was apprehended would have clearly produced convictions on all charges, and he could have been sentenced to 187 years imprisonment. That, compared with a twelve year sentence or even an eighteen year sentence, would have been a much worse outcome than what he received. Accordingly, the second prong of Strickland has not been proven.
The petition for a writ of habeas corpus is dismissed.
 ___________________ Rittenband, JTR